**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL T. LINSCOTT-HILL**<br>1605 Lolium Loop<br>Marysville, OH 43040<br><br>*Plaintiff,*<br><br>v.<br><br>**THE CITY OF COLUMBUS**<br>90 W Broad St.<br>Columbus, OH 43215<br><br>and<br><br>**ROBERT B. SCHULER**<br>**TIMOTHY M. GRIMM**<br>**RONALD A. JACOBS**<br>**SCOTT W. BARTHOLOW**<br>**JOSEPH U. ECHENRODE**<br>c/o City of Columbus Division of Police<br>120 Marconi Blvd.<br>Columbus, OH 43215<br>Individually and in Their Official Capacity as<br>Employees of the City of Columbus, Ohio<br><br>*Defendants.* | Case No.<br><br><br>Judge |

**CIVIL-RIGHTS COMPLAINT WITH JURY DEMAND**

**NATURE OF ACTION**

1. This is a civil-rights action brought to redress the wrongful and unjust prosecution perpetrated by Defendant Robert Schuler against protestor Michael Linscott-Hill. Mr. Linscott-Hill committed no crime and there was no probable cause for the citation he received.

2. Defendant Schuler abused his power as a police officer when he filed a ticket for disorderly conduct against Mr. Linscott-Hill as punishment for his engaging in constitutionally protected speech and questioning Defendant Schuler's authority.

3. Even after it was discovered that there was no evidence to support charges against Mr. Linscott-Hill, Defendant Schuler—with the support, encouragement, and participation of Sergeant Timothy Grimm, Sergeant Ronald Jacobs, Lieutenant Scott Bartholow, and Commander Joseph Echenrode—unlawfully proceeded to charge and prosecute Mr. Linscott-Hill.

4. Michael Wood, then the interim police chief, was deliberately indifferent toward the request for charges by Defendant Jacobs. His actions were consistent with the City's longstanding policy, custom, and practice of maliciously prosecuting protestors for exercising their freedom of speech by challenging police officers' authority and other obviously unconstitutional policies, customs, and practices, commencing criminal prosecutions solely based on criticism against a police officer, and similarly unconstitutional policies, customs, and practices reflected in appellate reversals of City-led convictions.

5. The City did not simply fail to incorporate clearly established legal protections into its investigative practices or provide rudimentary training to officers about constitutional restrictions on policing—it squarely assaulted them by tolerating a clear and consistent pattern of officers issuing retaliatory charges against protestors without probable cause.

6. Criticizing and questioning the actions of government officials—including police officers— is a constitutional right enjoyed by every citizen. It is not a crime. In issuing a disorderly conduct ticket against Mr. Linscott-Hill and facilitating a warrant for his arrest, Defendant Schuler maliciously punished a civilian for exercising his right to freedom of speech. In supervising, encouraging, and participating in his prosecution, Defendants Grimm, Jacobs,

Bartholow, and Echenrode—acting in concert with Schuler and with one another—violated Mr. Linscott-Hill's constitutional rights.

7. Mr. Linscott-Hill was humiliated by the violation of his constitutional rights and has faced significant emotional damage.

### PARTIES

8. Plaintiff Michael Linscott-Hill is a resident of Union County, Ohio.

9. Defendant City of Columbus (the "City") is a municipal corporation under Article XVIII of the Ohio Constitution, and a "person" subject to suit within the meaning of 42 U.S.C § 1983.

10. Defendant Robert B. Schuler is and was at all relevant times a police officer employed by the City of Columbus, Ohio Division of Police. He was acting under the color of state law. He is sued in both his official and personal capacities.

11. Defendant Timothy M. Grimm is and was at all relevant times a sergeant employed by the City of Columbus Division of Police, and was acting under the color of state law. He is sued in both his official and personal capacities.

12. Defendant Ronald A. Jacobs is and was at all relevant times a sergeant employed by the City of Columbus Division of Police, and was acting under the color of state law. He is sued in both his official and personal capacities.

13. Defendant Scott W. Bartholow is and was at all relevant times a lieutenant employed by the City of Columbus Division of Police, and was acting under the color of state law. He is sued in both his official and personal capacities.

14. Defendant Joseph U. Echenrode is and was at all relevant times a commander employed by the City of Columbus Division of Police, and was acting under the color of state law. He is sued in both his official and personal capacities.

**JURISDICTION AND VENUE**

15. This Court has jurisdiction over federal claims under 42 U.S.C. §§ 1983 and 1988, which

    provide for attorney and expert fees for vindication of civil-rights claims, and under 28

    U.S.C. §§ 1331 and 1343. This court has jurisdiction over pendant state claims under 28

    U.S.C. § 1367.

16. This Court has personal jurisdiction over Defendants and provides proper venue under 28

    U.S.C. § 1391 because the events giving rise to Plaintiff's claims took place within the

    jurisdiction of the U.S. District Court for the Southern District of Ohio.

**FACTS**

**Mr. Linscott-Hill exercises his constitutional rights by peaceably attending the George Floyd protests in Columbus**

17. Plaintiff Michael Linscott-Hill is an interested and active citizen who, on May 28, 2020,

    attended protests taking place outside the State of Ohio Building against the unjustified

    police murder of George Floyd in Minnesota.

18. Mr. Linscott-Hill protested peaceably every day after work, exercising his constitutional right

    to freedom of speech and assembly.

19. While at the protests, Mr. Linscott-Hill met a group of like-minded protestors who attended

    daily as well. He became close with two other protestors, Ms. Erica Barbie and Mr. Terrel

    Cornelius, and they began to attend protests together.

20. During none of the several days the three friends protested together was the group

    disorderly or disruptive.

**Defendant Schuler unlawfully takes Ms. Barbie's cellphone**

21. On or around May 30, 2020, Ms. Barbie was peaceably protesting outside of the State

    Building, as she did on a near-daily basis.

Page 4 of 37

22. While patrolling the protest, Defendant Schuler took Ms. Barbie's cellphone.

23. Although Mr. Linscott-Hill was not present when Ms. Barbie's phone was taken, she told him about it about it a week or two later. For months, Ms. Barbie tried to get her phone back—unsuccessfully.

### Mr. Linscott-Hill interacts with Defendant Schuler for the first time and questions his authority

24. On September 3, 2020, Mr. Linscott-Hill, Ms. Barbie, and Mr. Cornelius attended the ongoing protest. This time, the group noticed a man watching them from a car for hours. Ms. Barbie recognized the man as Defendant Schuler—the officer who had taken her phone.

25. Defendant Schuler was out-of-uniform and parked in an unmarked car in the middle of the street:



*Defendant Robert Schuler, out of uniform and sitting in an unmarked vehicle on September 3, 2020*

26.     Mr. Linscott-Hill and Ms. Barbie approached Defendant Schuler to inquire about Ms. Barbie's phone:



*Defendant Robert Schuler questioned by Michael Linscott-Hill and Erica Barbie on September 3, 2020*

27. Mr. Linscott-Hill asked Defendant Schuler a series of lawful and simple questions, such as, "Are you a police officer?" and "What is your name and badge number?"

28. His questions were neither aggressive nor disrespectful. Nor was he interfering with the officer's duties.

29. As a citizen, Mr. Linscott-Hill has the constitutional right to question government employees, including Defendant Schuler.

30. Defendant Schuler admitted to being a police officer, but refused to answer Mr. Linscott-Hill's other straightforward questions, including his request for Defendant Schuler's name and badge number, and whether he was on duty.

31. Instead, Defendant Schuler demanded Mr. Linscott-Hill get off the street and threatened to call the police if he did not comply.

32. Mr. Linscott-Hill immediately complied by moving to the sidewalk.

33. Defendant Schuler told Ms. Barbie, "Get your friend out of here," and then ominously warned Mr. Linscott-Hill, "I will see you soon" before he began to drive away.

34. Mr. Linscott-Hill—aware that other detectives in Defendant Schuler's Crime Investigation Unit had falsely arrested and issued fraudulent tickets against other protestors—yelled through closed passenger window to ask Defendant Schuler whether he was planning on issuing false charges, or a "shadow warrant," against him.

35. Defendant Schuler did not directly answer the question. Instead, he cracked his passenger window open, smiled threateningly at Mr. Linscott-Hill, and repeated, "I will see you soon" before driving off.

36. This was the first interaction between Mr. Linscott-Hill and Defendant Schuler.

**Mr. Linscott-Hill files his first complaint against Defendant Schuler**

37. Immediately after his first interaction with Defendant Schuler, Mr. Linscott-Hill called the Internal Affairs Bureau to report that Defendant Schuler was out-of-uniform, illegally parked on the side of the street watching him and his friends.

38. Mr. Linscott-Hill reported that Defendant Schuler had failed to answer whether he was on or off duty and refused to provide his name and badge number to an inquiring citizen.

39. Mr. Linscott-Hill also reported that Defendant Schuler told him to get off the street under threat of calling the police, noting that he had threatened to issue Mr. Linscott-Hill a 'shadow warrant'—a threat that Defendant Schuler eventually fulfilled.

40. Mr. Linscott-Hill was not the sole citizen to be maliciously prosecuted for peaceably protesting George Floyd's murder. In fact, as the examples below illustrate, Columbus police

officers had a clear-and-consistent pattern and practice of issuing false charges and warrants without probable cause against non-violent protestors who did nothing more than exercise their constitutional rights to protest police brutality and question the authority of the officers.

41. The City was deliberately indifferent to its officers' malicious prosecution of non-violent protestors and failed to adequately institute and train supervisors and officers to hold each other accountable when First Amendment violations and malicious prosecution occurs in the field.

42. Sergeant Kyle Fishburn completed the intake for Mr. Linscott-Hill's complaint and told him that the Internal Affairs Bureau would be in touch.

**Defendant Schuler maliciously, selectively, and unlawfully cites Mr. Linscott-Hill for being a pedestrian on a roadway and for disorderly conduct**

43. On September 5, 2020, merely two days after their initial confrontation, Defendant Schuler filed an "other offense" ticket against Mr. Linscott-Hill.

44. The ticket alleged that in standing on a roadway Mr. Linscott-Hill violated Columbus Traffic Code § 2171.05(A).

45. On information and belief, this was a selective prosecution. Defendant Schuler and his fellow officers did not ordinarily charge such petty, "pedestrian" offenses.

46. Defendant Schuler did not indicate that Mr. Linscott-Hill had a bicycle or any other type of vehicle.

47. The ticket was dated September 2, 2020—the day *before* Defendant Schuler interacted with Mr. Linscott-Hill for the first time.

48. The ticket was false. Mr. Linscott-Hill was not a pedestrian in a roadway on September 2, and, in fact, Defendant Schuler had not even seen Mr. Linscott-Hill until September 3.

49. Defendant Schuler filed this ticket on September 5, along with a separate ticket against Mr. Linscott-Hill for disorderly conduct.

50. Nothing about Mr. Linscott-Hill's conduct was "disorderly." Defendant Schuler filed the ticket maliciously and unlawfully in retaliation for Mr. Linscott-Hill exercising his right to freedom of speech and assembly, questioning his authority, and filing an Internal Affairs Bureau complaint against him.

51. During the George Floyd protests, many officers in the Columbus Division of Police, including Defendant Schuler, falsely charged non-violent protestors with traffic violations, disorderly conduct, and other misdemeanors, without probable cause and as a way of punishing them for exercising their constitutional rights and to deter them from continuing to protest.

52. City officials knew of the false warrants and tickets and were deliberately indifferent to its officers' malicious prosecution and the violation of protestors' constitutional rights.

53. Mr. Linscott-Hill was not aware that a ticket had been issued against him and had no opportunity to challenge the charge.

### The Internal Affairs Bureau sustains part of Mr. Linscott-Hill's complaint against Defendant Schuler

54. On September 8, 2020, Mr. Linscott-Hill received a call from Defendant Timothy Grimm, a sergeant with the Internal Affairs Bureau, with an update on the investigation into Defendant Schuler's conduct.

55. Defendant Grimm's Internal Affairs Bureau report sustained Mr. Linscott-Hill's allegation the Defendant Schuler had refused to provide his name and badge number.

56. Defendant Grimm determined that all other allegations against Defendant Schuler were unfounded, exonerated, or not sustained.

**A warrant is signed for Mr. Linscott-Hill's arrest**

57. On September 18, 2020, an arrest warrant, based purely on Defendant Schuler's complaint that Mr. Linscott-Hill was engaging in disorderly conduct, was issued for Mr. Linscott-Hill's arrest.

58. The arrest warrant accused Mr. Linscott-Hill of causing inconvenience on September 2 by "standing in the roadway and using his bicycle to block the public roadway" and of "[refusing] police orders to vacate the roadway which prevented all vehicle traffic through the intersection."

59. Mr. Linscott-Hill does not own a bicycle, nor did he own or operate any bicycle on or about September 2, 2020, to block traffic or otherwise.

60. Defendant Schuler's complaint contradicts the "pedestrian in the runway" ticket he issued to Mr. Linscott-Hill. Apparently, Defendant Schuler was unable to decide whether he would falsely accuse Mr. Linscott-Hill of illegal conduct while walking or riding a bike, though neither was true.

61. As with the ticket, Mr. Linscott-Hill was unaware of the warrant and had no opportunity to challenge the legitimacy of the offense.

62. During the George Floyd protests, Columbus police officers displayed a clear and consistent pattern and practice of issuing false tickets and arrest warrants without probable cause.

63. Columbus police officers intentionally, maliciously, and without probably cause charged non-violent protestors with misdemeanors in retaliation for speaking out against police brutality and to deter them from peaceably exercising their constitutional rights to free speech and assembly.

64. City officials were aware of the malicious prosecution and were deliberately indifferent to the clear and consistent pattern and practice.

65. The City's deliberate indifference deprived countless non-violent protestors—including Mr. Linscott-Hill—of their constitutional rights, causing injury.

66. On or around September 22, 2020, Mr. Linscott-Hill received solicitations from various attorneys in the area offering to defend him for his disorderly-conduct charge.

67. The mailings prompted Mr. Linscott-Hill to call a friend who serves as a street patrol officer, Officer Ryan Evans, to ask him about the warrant.

68. Officer Evans searched a police database for the complaint and informed Mr. Linscott-Hill that notes linked to the warrant for blocking traffic with a bicycle on September 2, 2020, described him as wearing a black shirt and carrying a red backpack.

69. Mr. Linscott-Hill did not own or operate a bicycle and was not blocking traffic on September 2, 2020.

70. In fact, on September 2, 2020, Mr. Linscott-Hill was with his husband, James Linscott-Hill, and his roommate, Viktoria Bogdans, shopping at Mernard's from around 5:30–6:30 p.m. The group left Menard's around 6:30 p.m. and drove directly to Mr. Linscott-Hill's home—arriving around 7:30 p.m.

71. From there, the group decided to go to the statehouse to participate in the evening protest.

72. Mr. Linscott-Hill was nowhere near the George Floyd protests on the date and time identified in the warrant and has time-stamped video footage showing him exiting his home at 7:37 pm—neither wearing a black shirt nor carrying a red backpack.

73. After receiving the information from Officer Evans, Mr. Linscott-Hill contacted several authorities, including the Columbus Police Division, and the Prosecutor's office.

74. Mr. Linscott-Hill was eventually referred to attorney David Thomas, who represented him in the criminal proceedings.

75. Mr. Thomas succeeded in getting the warrant set aside, sparing Mr. Linscott-Hill from undue arrest.

**Police refuse to produce Mr. Linscott-Hill's video evidence during discovery—and the charges against Mr. Linscott-Hill are dismissed**

76. In about September and October 2020, during the discovery stage of Mr. Linscott-Hill's criminal case, police refused Mr. Linscott-Hill's requests for—and failed to produce—five videos in their possession that exonerated him. The videos showed that he had not engaged in the conduct of which he was accused.

77. On November 12, 2020, the Franklin County prosecutor requested that the case against Mr. Linscott-Hill be dismissed.

78. The Franklin County Municipal Court followed the prosecutor's request and dismissed the case against Mr. Linscott-Hill, ending the case without any conviction on any charge.

79. At this time—as former Police Chief Thomas Quinlan would later admit under oath—the Franklin County prosecutor declined to prosecute many of the George Floyd protestors that Columbus Division of Police officers had charged.

**Mr. Linscott-Hill files a second complaint against Defendant Schuler**

80. On November 13, 2020, Mr. Linscott-Hill again contacted the Internal Affairs Bureau and filed a second complaint against Defendant Schuler for maliciously filing a disorderly-conduct charge against him, resulting in a warrant for his arrest.

81. On December 9, 2020, Defendant Grimm sent Mr. Linscott-Hill an email stating his complaint against Defendant Schuler was being "dismissed for insufficient evidence to only having citation and report."

82. In the same email, Defendant Grimm requested that Mr. Linscott-Hill send any evidence relevant to the investigation into Defendant Schuler's conduct.

83. On December 18, 2020, Defendant Grimm emailed Mr. Linscott-Hill, informing him that if he did not provide the requested documents by that very weekend, the investigation team "would be forced to proceed without it."

84. The same day, Mr. Linscott-Hill replied to Defendant Grimm's email, stating he was unsure what provoked the forceful timeline, noting that the Union contract states they have 56 days to complete the investigation. Mr. Linscott-Hill filed the complaint on November 13, 2020, but was not contacted at all until November 24, 2020.

85. Mr. Linscott-Hill was awaiting all relevant evidence, including an audio recording between Defendant Schuler and Defendant Grimm.

86. The 56-day mark would have been January 8, 2021.

87. Mr. Linscott-Hill requested an extension because of these circumstances.

88. During a December 22, 2020, phone call, Mr. Linscott-Hill told Defendant Grimm that he had additional evidence, including the exonerating video, to support he was not in the downtown area at the time Defendant Schuler alleges Mr. Linscott-Hill committed the offenses.

89. On December 29, 2020, Mr. Linscott-Hill personally handed an envelope with a USB drive to Defendant Grimm containing all relevant evidence within his possession—including the time-stamped video proving that Mr. Linscott-Hill was not present at the protests on the date cited by Defendant Schuler's warrant.

90. When Mr. Linscott-Hill recovered his USB drive from the Columbus Police Department, this video was not among its contents.

91. In concluding his second Internal Affairs report, Defendant Grimm stated that Mr. Linscott-Hill provided only two videos, "neither of which were relevant to this specific complaint."

92. This statement was false. In fact, Mr. Linscott-Hill provided Defendant Grimm with three videos relevant to his complaint—one of which, from Mr. Linscott-Hill's home-security camera, showed that Mr. Linscott-Hill was at home, not in the Short North where the alleged incident took place. Nor did Mr. Linscott-Hill resemble the actual person implicated in the incident.

93. Defendant Grimm knew these facts. And Mr. Linscott-Hill, on September 23, 2020, told him and other police-division supervisors, internal-affairs personnel, and others these facts many times.

94. Defendant Grimm had also obtained about five September 2, 2022 videos from Officer Mark Lovett's camera. September 2 was the date Mr. Linscott-Hill's ticket alleged as the day he supposedly blocked traffic. Video footage showed a man—who was plainly not Mr. Linscott-Hill—blocking traffic with a bicycle.

95. And Defendant Grimm knew that it was not Mr. Linscott-Hill in the video footage because, again, he had time-stamped video evidence from Mr. Linscott-Hill showing that Mr. Linscott-Hill was not present at the protests at that date and time.

**Defendants Grimm, Jacobs, Bartholow, and Echenrode conspire to recommend new charges against Mr. Linscott-Hill**

96. Nevertheless, on January 8, 2021, proceeding with information he knew to be false, Defendant Grimm took a screenshot of Officer Lovett's video and sent it in an email to Defendant Sergeant Jacobs claiming the man in the video was Mr. Linscott-Hill—thereby encouraging and participating in the malicious prosecution.

97. On February 9, 2021, after viewing the screenshot, Defendant Jacobs requested that additional charges be issued against Mr. Linscott-Hill—this time for making false allegations in a police report.

98. Defendant Jacobs alleged that five video clips from Officer Lovett's body camera showed Mr. Linscott-Hill in the downtown area on September 2, 2020, and supported the charges filed by Defendant Schuler.

99. In fact, Mr. Linscott-Hill never made false allegations on any police report. Rather, he timely provided police with relevant video showing that he was leaving his home on September 2 at the time listed on the disorderly conduct ticket—proving he could not possibly be the man in the video blocking traffic.

100. Defendant Jacobs' request was designed to punish Mr. Linscott-Hill for engaging in constitutionally protected activity—namely, questioning the authority of a government officer and filing complaints against him.

101. In recommending new charges, Defendant Jacobs encouraged and participated in the malicious prosecution of Mr. Linscott-Hill.

102. On February 9, 2021, Defendant Jacobs routed his request for charges to then Interim Chief of Police, Michael Woods, a Columbus employee designated with the authority to make final decisions on the police division's behalf.

103. As the acting police chief, Woods's decisions set official municipal policy.

104. Chief Woods was deliberately indifferent to his officers' malicious prosecution of Mr. Linscott-Hill when he ignored Defendant Jacobs' notice. His actions were the driving force behind the continuation of the prosecution.

105. Both Defendant Bartholow and Defendant Echenrode had awareness of and access to the evidence provided by Mr. Linscott-Hill, which proved that he could not have possibly disrupted traffic on September 2, 2020, with a bicycle or otherwise.

106.    As former Police Chief Thomas Quinlan would later declare under oath, if officers or supervisors "believe that an officer may have done something wrong, [they are] required to report it."

107.    Defendants Bartholow and Echenrode were aware of the evidence provided by Mr. Linscott-Hill that proved he was not at the protests at the date and time identified by Defendant Schuler. And they were aware of the false charges Defendant Schuler nonetheless issued against a non-violent protestor.

108.    Both Defendant Bartholow and Defendant Echenrode supported the fraudulent charges fabricated by Defendants Schuler, Grimm, and Jacobs—concluding that that the video evidence from Officer Lovett's camera showed Mr. Linscott-Hill's disorderly conduct.

109.    By substantiating the phony charges against Mr. Linscott-Hill, both Defendants Bartholow and Echenrode encouraged and participated in the malicious prosecution of Mr. Linscott-Hill.

110.    On January 19, 2021, Defendant Grimm completed his investigation into Mr. Linscott-Hill's second complaint against Defendant Schuler, concluding that "the alleged conduct is refuted by a preponderance of the evidence. Unfounded."

111.    Defendant Grimm's decision to clear Defendant Schuler of all wrongdoing in the face of direct evidence to the contrary was egregious and shows the blatant attempt to protect Defendant Schuler from the consequences of his unlawful conduct.

112.    Defendants' conduct reveals their conspiracy to punish Mr. Linscott-Hill for exercising his constitutional rights.

113.    During the George Floyd protests, Columbus Division of Police officers had a clear and consistent practice of falsely charging non-violent protestors with traffic violations, disorderly conduct, and other misdemeanors as a way of retaliating against them for speaking

out against police brutality against Black citizens and to deter them from their peaceful protesting. In addition to falsely charging Mr. Linscott-Hill, the Columbus Division of Police also, at minimum, falsely charged the following individuals:

**a. Justin Mathews**

  i. Through the summer of 2020, Mr. Mathews was a frequent attendee of the George Floyd protests in downtown Columbus. In or around July 2020, Mr. Mathews noticed an unknown Columbus Division of Police officer questioning an older woman on the street and holding the woman's identification card. He overheard the women stating she had answered the officer's questions and now wanted her ID back so she could continue her peaceable protesting. The officer continued to hold the ID and Mr. Mathews approached the officer and explained to him that he did not have the right to keep the woman's identification card or to stop her from protesting. The officer displayed irritation by Mr. Mathews's assertion of the woman's rights, but nevertheless gave the woman her ID back and let them both go.

  ii. In or around September 2020, however, Mr. Mathews discovered he had been charged with obstruction of justice and jaywalking following his interaction with the officer and that a warrant had been issued for his arrest. Mr. Mathews had never obstructed justice and had only intervened to help protect the woman's constitutional rights.

  iii. Mr. Mathews succeeded in getting his arrest warrant set aside and the charges against him were eventually dismissed for lack of evidence.

**b. Jasmine Williams**

 i. Through the summer of 2020, Ms. Williams was another frequent attendee of the George Floyd protests in downtown Columbus. In or around July 2020, Ms. Williams discovered through an online search that a warrant had been issued for her arrest and she had been charged with obstruction of official police business. Ms. Williams had never obstructed police business and there was no probable cause for her charge. No officer ever presented her with a ticket or arrested her and she would not have known about the charge but for her online search. The charge was given to her in retaliation for her peaceful protesting and to intimidate her and stop her from further exercising her First Amendment rights.

 ii. Ms. Williams succeeded in getting her arrest warrant set aside and presented video evidence showing she was not obstructing police business on the date identified by the charges. The charge against her was eventually dismissed at the prosecutor's request.

**c. Demetrius Burke[1]**

 i. On the evening of June 3, 2020, Mr. Burke—concerned about police sirens he was hearing outside—left his apartment and went to check on his motorcycle in the apartment's parking lot. When he observed Columbus Division of Police officers walking on the street, he pulled out his phone to record the officers' actions. When two officers approached him, Mr. Burke respectfully asked them what was happening. While recording and speaking

---

[1] Plaintiff incorporates by reference the allegations of Demetrius Burke in the Complaint in *Tamara K. Alsaada, et al. v. The City of Columbus, et al.,* U.S. District Court for the Southern District of Ohio Case No. 2:20cv3431, ¶¶ 159–79 (attached as **Ex. 1**).

with the officers, Mr. Burke remained on his own property and never

stepped onto the street. Although Mr. Burke was on his own property,

Officer Kenneth Kirby falsely accused Mr. Burke of violating the 10:00 pm

curfew order imposed at that time by the City of Columbus.

ii. Ignoring Mr. Burke's pleas that he was standing on his own grass, Officer

Kirby used a zip tie to restrain Mr. Burke's hands behind his back. Officer

Kirby had no probable cause to arrest Mr. Burke, who was merely standing

peaceably on his own property. Mr. Burke was taken to a nearby fire station

being used to process individuals who had been arrested during the George

Floyd protests and then to the Jackson Pike Correctional center where he

was held with other arrested individuals. His curfew violation charges were

dismissed on June 9, 2020, as part of a blanket dismissal of curfew violations.

**d. Nadia Lynch[2]**

i. On May 30, 3030, Ms. Lynch attended a protest near the intersection of

Broad and High Street in Columbus. Columbus Division of Police officers—

wearing helmets, gas masks, and tactical clothing—had closed the area to

vehicular traffic and formed lines with their bicycles facing the protestors.

Ms. Lynch stepped up to greet protestors on the other side of the line and to

take a photo near the line of officers. She then went to walk back her group.

Without issuing any commands or directions, Officer Holly Kanode grabbed

Ms. Lynch by her backpack and threw her down to the ground, causing her

head to hit the pavement. Three or more officers then began to attack Ms.

---

[2] Plaintiff incorporates by reference the allegations of Nadia Lynch in the Complaint in *Tamara K. Alsaada, et al. v. The City of Columbus, et al.,* U.S. District Court for the Southern District of Ohio Case No. 2:20cv3431, ¶¶ 308–32 (attached as **Ex. 1**).

Lynch and zip-tied her hands behind her back. She never resisted arrest or fought with any of the officers arresting her. Officer Kanode later filed formal charges against Ms. Lynch for disorderly conduct and resisting arrest. Officer Kanode falsely swore under oath that Ms. Lynch had grabbed an officer by his riot gear and threw him to the ground—his attempt to cover the excessive use of force used in arresting her. Officer Kanode never had probable cause to arrest Ms. Lynch.

114. The officers' malicious prosecution of these non-violent protestors, Mr. Linscott-Hill among them, has chilled them from further exercising their rights to freedom of speech and assembly.

115. The City was deliberately indifferent to its officers' actions—thereby communicating to the officers its tacit approval of the clear and consistent practice. And the City's acquiescence to its officers' actions was the driving force behind the malicious prosecution of and retaliation against multiple non-violent protestors—including Mr. Linscott-Hill.

116. As a direct and proximate result of Defendants' malicious prosecution and unlawful conduct, Mr. Linscott-Hill suffered the violation of his constitutional rights under the First and Fourteenth Amendments.

117. Mr. Linscott-Hill suffered and continues to suffer severe damages including mental and emotional distress in an amount to be determined at trial.

### Claim 1
### MALICIOUS PROSECUTION UNDER THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (AGAINST DEFENDANT CITY OF COLUMBUS, AND AGAINST DEFENDANTS SCHULER, GRIMM, JACOBS, BARTHOLOW, AND ECHENRODE IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)

118.     Plaintiff Michael Linscott-Hill incorporates all previous allegations.

119.     Mr. Linscott-Hill has clearly established rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures. Defendant Schuler violated these rights when he initiated criminal proceedings against Mr. Linscott-Hill in retaliation for Mr. Linscott-Hill's constitutionally protected speech and in the absence of any probable cause to believe that Mr. Linscott-Hill had committed a crime.

120.     All other Defendants violated these rights when they acted in concert with Defendant Schuler to carry out the criminal proceedings against Mr. Linscott-Hill. In fact, all individual Defendant made, influenced, and/or participated in the decision to prosecute Mr. Linscott-Hill.

121.     Defendants lacked probable cause to initiate charges and carry out criminal prosecution against Mr. Linscott-Hill. In fact, they knew from time-stamped video evidence provided by Mr. Linscott-Hill that he had committed no crimes.

122.     The charges against Mr. Linscott-Hill were later terminated in his favor.

123.     The individual Defendants pursued this prosecution of Mr. Linscott-Hill with malice in retaliation for Mr. Linscott-Hill engaging in constitutionally protected speech, and without probable cause or reasonable basis for believing that Mr. Linscott-Hill had engaged in disorderly conduct or committed any other crime.

124.     Defendant City of Columbus is responsible for the violation of Mr. Linscott-Hill's constitutional rights because the individual Defendants' actions resulted from the City of

Columbus' deliberate indifference to a custom, pattern, practice, or policy of allowing its officers and employees to seek warrants, arrest, and charge individuals in retaliation for their expressive conduct in exercising their First Amendment rights and/or a deliberately indifferent failure to train, supervise, and discipline its officers and employees who engage in such conduct.

**Claim 2**
**FIRST AMENDMENT RETALIATION—RETALIATORY CHARGES/PROSECUTION**
**(AGAINST DEFENDANT CITY OF COLUMBUS, AND AGAINST DEFENDANTS SCHULER, GRIMM, JACOBS, BARTHOLOW, AND ECHENRODE IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)**

125.    Plaintiff Michael Linscott-Hill incorporates all previous allegations.

126.    Attending and participating in public protests, questioning the actions of government officials—including police officers—and filing complaints against police officers are all protected by the First Amendment to the United States Constitution.

127.    Defendants' actions in investigating, charging, and ignoring the evidence provided by Mr. Linscott-Hill, in the absence of probable cause that Mr. Linscott-Hill had committed a crime, constituted unlawful retaliation against Mr. Linscott-Hill by public officials for engaging in activity protected by the First Amendment to the United States Constitution.

128.    Defendants above-described actions violate the rights of Mr. Linscott-Hill to freedom of expression, freedom of speech, and freedom of assembly as guaranteed by the First Amendment of the United States Constitution.

129.    Defendant City of Columbus is responsible for the violations of Mr. Linscott-Hill's constitutional rights because the individual Defendants' actions resulted from the City of Columbus' deliberate indifference to a custom, pattern, practice, or policy of allowing its officers to investigate and charge individuals for their protected conduct in protesting, questioning officer activity, and reporting the misconduct of officers and/or a deliberately

indifferent failure to train, supervise, and discipline officers and employees who engage in such conduct.

### CLAIM 3
### FIRST AMENDMENT RETALIATION, 42 U.S.C. § 1983—PRIOR RESTRAINT
### (AGAINST DEFENDANT CITY OF COLUMBUS, AND AGAINST DEFENDANTS SCHULER, GRIMM, JACOBS, BARTHOLOW, AND ECHENRODE IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)

130.  Plaintiff Michael Linscott-Hill incorporates all previous allegations.

131.  "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."[3]

132.  Prior restraints can take many forms, including court orders,[4] statutes,[5] or even "informal procedures undertaken by officials and designed to chill expression."[6]

133.  Some prior restraints are explicit.[7] But more subtle governmental action, such as an ordinance allowing a ban on news racks on the sidewalks, can be a prior restraint.[8]

134.  As in this case, threats of criminal prosecution can also effect a prior restraint.[9]

135.  At all material times, Mr. Linscott-Hill was engaged in constitutionally protected activity.

---

[3] *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

[4] *New York Times Co. v. United States*, 403 U.S. 713, 715 (1971) (court order preventing "publication of information whose disclosure would endanger the national security" is a "flagrant, indefensible, and continuing violation of the First Amendment.") (Black, concurring).

[5] *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 723 (1931) (Statute prohibiting publication of "malicious, scandalous and defamatory matter" is a prior restraint and "an infringement of the liberty of the press guaranteed by the Fourteenth Amendment.").

[6] *Multimedia Holdings Corp. v. Circuit Court of Fla., St. Johns Cty.*, 544 U.S. 1301, 1306 (2005).

[7] *New York Times Co.*, 403 U.S. at 715 (court order preventing "publication of information whose disclosure would endanger the national security" is a "flagrant, indefensible, and continuing violation of the First Amendment.") (Black, concurring).

[8] *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988) ("[A] licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint.").

[9] *Novak v. City of Parma*, 932 F.3d 421, 433 (6th Cir. 2019) (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)) ("Novak also plausibly alleges that the officers created a prior restraint with their press release threatening to take legal action.").

136.     Defendants sought to effect unlawful prior restraints on Mr. Linscott-Hill by threatening him and engaging in the above-described retaliatory and maliciously prosecutorial campaign to chill him from engaging in protected activity.

137.     This campaign injured Mr. Linscott-Hill by restraining, preventing, and impairing his exercise of his rights, and did so in a way likely to chill a person of ordinary firmness from continuing to exercise those rights.

138.     Defendants' actions—on the City's behalf—violated Mr. Linscott-Hill's clearly established constitutional and statutory rights, and were unlawful under clearly established law. No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations.

139.     As a direct and proximate result of Defendants' unlawful activity, Mr. Linscott-Hill has suffered and continues to suffer damages for which Defendants are liable.

140.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### Claim 4
### EQUAL PROTECTION VIOLATION, 42 U.S.C. § 1983
### SELECTIVE ENFORCEMENT/SELECTIVE PROSECUTION
### (BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST DEFENDANT CITY OF COLUMBUS, AND AGAINST DEFENDANTS SCHULER, GRIMM, JACOBS, BARTHOLOW, AND ECHENRODE IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)

141.     Plaintiff incorporates all previous allegations.

142.     Defendants ticketed, investigated, and prosecuted Mr. Linscott-Hill when they did not do so to other similarly situated people who had not engaged in constitutionally protected speech. Other similarly situated people engaged in the conduct that Defendants accused Mr. Linscott Hill of engaging in without being charged for that conduct.

143.     None of those people dared question a police officer.

144.     Defendants' purpose in ticketing and prosecuting Mr. Linscott-Hill was to retaliate for his exercise of his constitutional and statutory rights.

145.     Defendants' actions—on the City's behalf—violated Mr. Linscott-Hill's clearly established constitutional and statutory rights, and were unlawful under clearly established law. No reasonable government officials would have believed otherwise.

146.     As a direct and proximate result of Defendants' unlawful activity, Mr. Linscott-Hill has suffered and continue to suffer damages for which Defendants are liable.

147.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### Claim 5
### UNLAWFUL RETALIATION AGAINST FREE SPEECH UNDER THE OHIO CONSTITUTION (BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST DEFENDANT CITY OF COLUMBUS, AND AGAINST DEFENDANTS SCHULER, GRIMM, JACOBS, BARTHOLOW, AND ECHENRODE IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)

148.     Plaintiff Michael Linscott-Hill incorporates all previous allegations.

149.     Attending and participating in public protests, questioning the actions of government officials—including police officers—and filing complaints against police officers are all protected by the Ohio Constitution.

150.     Defendants' actions in investigating, charging, and ignoring the evidence provided by Mr. Linscott-Hill, in the absence of probable cause that Mr. Linscott-Hill had committed a crime, constituted unlawful retaliation against Mr. Linscott-Hill by public officials for engaging in activity protected by the Ohio Constitution.

151.     Defendants' actions violate the rights of Mr. Linscott-Hill to freedom of speech as guaranteed by the Ohio Constitution.

152.     Defendant City of Columbus is responsible for the violations of Mr. Linscott-Hill's rights under the Ohio Constitution because the individual Defendants' actions resulted from the City of Columbus' deliberate indifference to a custom, pattern, practice, or policy of allowing its officers to investigate and charge individuals for their protected conduct in protesting, questioning officer activity, and reporting the misconduct of officers and/or a deliberately indifferent failure to train, supervise, and discipline officers and employees who engage in such conduct.

### Claim 6
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1), 2913.42 (A)(1), 2923.03, 2923.01
### (BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST DEFENDANTS SCHULER, GRIMM, JACOBS, BARTHOLOW, AND ECHENRODE IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)
### (TAMPERING WITH RECORDS)

153.     Plaintiff Michael Linscott-Hill incorporates all previous allegations.

154.     Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages, in a civil action," including attorneys' fees and punitive damages.

155.     Under Ohio Rev. Code § 2913.42 (A)(1), it is a crime to knowingly falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record.

156.     Under Ohio Rev. Code §§ 2923.02 (Attempt) and 2923.03 (Complicity) it is a criminal act to attempt to commit a criminal offense or to be complicity, as defined in § 2923.03, in doing so. This allegation is incorporated into all remaining § 2307.60 (A)(1) claims in this Complaint.

157.     The USB Mr. Linscott-Hill provided Defendant Grimm contained a video that would conflict with Schuler's narrative.

158.     Mr. Linscott-Hill's USB is a record Defendants had no right to tamper with.

159.     When Mr. Linscott-Hill finally retrieved this USB, the video was no longer there.

160.      The individual Defendants have acted maliciously and in concert to injure Mr. Linscott-Hill. The actions of the individual Defendants have resulted in actual damages to Mr. Linscott-Hill.

**Claim 7**
**CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.03 (A)**
**(BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST DEFENDANTS SCHULER, JACOBS, BARTHOLOW, AND ECHENRODE)**
**(INTIMIDATION—FALSE WRITINGS)**

161.     Plaintiff Michael Linscott-Hill incorporates all previous allegations.

162.     Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages, in a civil action," including attorneys' fees and punitive damages.

163.     Under Ohio Rev. Code § 2921.03 (A), "No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of the person's the person's duties of the public servant, party official, attorney, or witness."

164.     Defendant Schuler's threat toward Mr. Linscott-Hill, "I'll see you soon" came to be realized.

165.     Defendant Schuler filed a materially false and fraudulent ticket and warrant against Mr. Linscott-Hill with malicious purpose, in bad faith, and in a wanton and reckless manner, because of Mr. Linscott-Hill's lawful questions and reports to IAB, and in an attempt to influence public servants in the discharge of their duties.

166.     Defendants Jacobs, Bartholow, and Echenrode, all signed off on the request for charges that Mr. Linscott-Hill filed a false allegation against Defendant Schuler.

167.     The individual Defendants have acted maliciously and in concert to injure Mr. Linscott-Hill. The actions of the individual Defendants have resulted in actual damages to Mr. Linscott-Hill.

**Claim 8**
**CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.12 (A)(1)**
**(BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST DEFENDANTS SCHULER, GRIMM JACOBS, BARTHOLOW, AND ECHENRODE)**
**(TAMPERING WITH EVIDENCE)**

168.     Plaintiff Michael Linscott-Hill incorporates all previous allegations

169.     Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages, in a civil action," including attorneys' fees and punitive damages.

170.     Under Ohio Rev. Code § 2921.12 (A)(1), it is a criminal act to alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

171.     The USB Mr. Linscott-Hill provided Defendant Grimm contained a video that would conflict with Schuler's narrative.

172.     This key video was not considered, or even mentioned, within Defendant Grimm's report despite Mr. Linscott-Hill telling Defendant Grimm it would be included in the USB.

173.     When Mr. Linscott-Hill retrieved the USB, it no longer contained the video.

174.     All Defendants knew there was an ongoing internal-affairs investigation.

175.     The USB was tampered with by someone within the department who had an incentive to do so.

176.     The individual Defendants have acted maliciously and in concert to injure Mr. Linscott-Hill. The actions of the individual Defendants have resulted in actual damages to Mr. Linscott-Hill.

## Claim 9
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.13 (A)(1)(2)(11)
### (BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST DEFENDANTS SCHULER, JACOBS, BARTHOLOW, AND ECHENRODE)
### (FALSIFICATION)

177.     Plaintiff Michael Linscott-Hill incorporates all previous allegations

178.     Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages, in a civil action," including attorneys' fees and punitive damages.

179.     Under Ohio Rev. Code § 2921.13 (A), "No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies: (1) The statement is made in any official proceeding, and (2) the statement is made with purpose to incriminate another, and (11) the statement is made on an account, form, record, stamp, label, or other writing that is required by law.

180.     Defendant Schuler's ticket and warrant against Mr. Linscott-Hill were both false and with intent to incriminate him.

181.     On September 3, 2020, Defendant Schuler threatened Mr. Linscott-Hill after their initial interaction with no lawful reasoning.

182.     Defendant Schuler wrote a false ticket, a statement made with purpose to incriminate Mr. Linscott-Hill, that was recorded on a record required by law.

183.     Defendant Schuler wrote a false warrant, a statement made with purpose to incriminate Mr. Linscott-Hill, that was recorded on a record required by law.

184.     Defendant Schuler's testimony during the first IAB, an official proceeding, is false, he had never met Mr. Linscott-Hill before September 3, 2020.

185.     Defendants Jacobs, Bartholow, and Echenrode all affirmed allegations that Mr. Linscott-Hill had submitted false allegations against a police officer.

186.     Their statements were false, as Mr. Linscott-Hill was not present in the September 2, 2020, video provided by Officer Lovett.

187.     Their statements were intended to incriminate Mr. Linscott-Hill for reporting their fellow police officer, Defendant Schuler, twice to the IAB.

188.     Their statements were recorded on a form required by law during an official proceeding.

189.     The individual Defendants have acted maliciously and in concert to injure Mr. Linscott-Hill. The actions of the individual Defendants have resulted in actual damages to Mr. Linscott-Hill.

### Claim 10
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.44 (B)
### (BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST DEFENDANTS SCHULER AND GRIMM)
### (DERELICTION OF DUTY)

190.     Plaintiff Michael Linscott-Hill incorporates all previous allegations

191.     Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages, in a civil action," including attorneys' fees and punitive damages.

192.     Under Ohio Rev. Code § 2921.44 (B), "No law enforcement, ministerial, or judicial officer shall negligently fail to perform a lawful duty in a criminal case or proceeding."

193.     On September 3, 2020, Defendant Schuler failed to answer lawful questions regarding his name and badge number by Mr. Linscott-Hill.

194.     The allegation was sustained by Defendant Grimm during the first internal affairs investigation, yet no disciplinary measures were taken against Defendant Schuler by his superiors.

195.     Mr. Linscott-Hill told Defendant Grimm the USB would contain a video showing he was at his home on or around the time he was alleged to have been engaging in disorderly conduct on September 2, 2020.

196.     Defendant Grimm failed to perform his duty as an investigator by failing to attempt to collect all the relevant sources of evidence that Mr. Linscott-Hill told him he would provide.

197.      The individual Defendants have acted maliciously and in concert to injure Mr. Linscott-Hill. The actions of the individual Defendants have resulted in actual damages to Mr. Linscott-Hill.

## Claim 11
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.45(A)
### (BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST DEFENDANTS SCHULER, GRIMM, JACOBS, BARTHOLOW, AND ECHENRODE)
### (INTERFERING WITH CIVIL AND STATUTORY RIGHTS)

198.     Plaintiff Michael Linscott-Hill incorporates all previous allegations

199.     Under Ohio Rev. Code § 2307.60(A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages, in a civil action," including attorneys' fees and punitive damages.

200.     Under Ohio Rev. Code § 2921.45(A), "No public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire to attempt to deprive any person of a constitutional or statutory right."

201.    Defendants Schuler, Grimm, Jacobs, Bartholow, and Echenrode, conspired to criminally convict Mr. Linscott-Hill for peaceably protesting and asking a law-enforcement officer a lawful question, both of which were his rights under the First Amendment.

202.    The individual Defendants have acted maliciously and in concert to injure Mr. Linscott-Hill. The actions of the individual Defendants have resulted in actual damages to Mr. Linscott-Hill.

### Claim 12
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2923.01 (A)
### (BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST DEFENDANTS SCHULER, GRIMM, JACOBS, BARTHOLOW, AND ECHENRODE)
### (CRIMINAL CONSPIRACY)

203.    Plaintiff Michael Linscott-Hill incorporates all previous allegations

204.    Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages, in a civil action," including attorneys' fees and punitive damages.

205.    Under Ohio Rev. Code § 2921.01 (A), "No person with purpose to commit or to promote or facilitate the commission of… engaging in a pattern of corrupt activity… shall do either of the following: (1) With another person or persons, plan or aid in planning the commission of any of the specified offenses; (2) Agree with another person or other persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses."

206.    Defendant Schuler conspired against Mr. Linscott-Hill through corrupt activity in writing a false ticket and false warrant against him.

207.    Defendant Grimm, by emailing Defendant Jacobs a screenshot of the videos provided by Officer Lovett of September 2, 2020, engaged in corrupt activity in conspiracy against Mr. Linscott-Hill.

208.     Defendants Jacobs, Bartholow, and Echenrode, all engaged in corrupt activity when requesting charges against Mr. Linscott-Hill, in tampering with video evidence, and engaging in falsification.

209.     Mr. Linscott-Hill has been aggrieved by these actions.

### Claim 13
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§2307.60 (A)(1) AND 2923.02 (A)
### (BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST DEFENDANTS SCHULER, GRIMM, JACOBS, BARTHOLOW, AND ECHENRODE)
### (ATTEMPTS TO COMMIT CRIMINAL OFFENSES)

210.     Plaintiff Michael Linscott-Hill incorporates all previous allegations.

211.     Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages, in a civil action," including attorneys' fees and punitive damages.

212.     Under Ohio Rev. Code § 2921.02 (A), "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct, that if successful, would constitute or result in the offense.

213.     Defendants Schuler, Grimm, Jacobs, Bartholow, and Echenrode have all engaged in conduct that would have constituted offenses had they been successful.

214.     The individual Defendants have acted maliciously and in concert to injure Mr. Linscott-Hill. The actions of the individual Defendants have resulted in actual damages to Mr. Linscott-Hill.

### Claim 14
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2923.03 (A)(1)(2)(3)
### (BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST DEFENDANTS SCHULER, GRIMM, JACOBS, BARTHOLOW, AND ECHENRODE)
### (COMPLICITY)

215.     Plaintiff Michael Linscott-Hill incorporates all previous allegations.

216.    Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages, in a civil action," including attorneys' fees and punitive damages.

217.    Under Ohio Rev. Code § 2921.03 (A), "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: (1) Solicit or procure another to commit the offense; (2) Aid or abet another in committing the offense; (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code."

218.    Defendants Schuler, Grimm, Jacobs, Bartholow, and Echenrode, have all solicited offenses as listed herein; have aided and abetted each other in committing these offenses; have conspired with one another to incriminate Mr. Linscott-Hill.

219.    The individual Defendants have acted maliciously and in concert to injure Mr. Linscott-Hill. The actions of the individual Defendants have resulted in actual damages to Mr. Linscott-Hill.

### Claim 15
### MUNICIPAL *MONELL* LIABILITY 42 U.S.C. § 1983—UNCONSTITUTIONAL POLICY
### (BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST THE CITY OF COLUMBUS)

220.    Plaintiff Michael Linscott-Hill incorporates all previous allegations.

221.    Chief of Police Michael Woods authorized, implemented, acquiesced in, and tolerated an unconstitutional custom, policy, pattern, and practice of refusing to distinguish protected and unprotected speech in criminal investigations and prosecutions. Woods also authorized, implemented, acquiesced in, and tolerated an unconstitutional policy of authorizing and instituting criminal investigation and prosecution for protected speech. Woods also authorized and implemented an unconstitutional policy of seeking criminal sanctions based on perceived offenses to police officer's dignity.

222.      Woods was authorized to make official policy for the City on these issues.

223.      The City is liable under the First, Fourth, and Fourteenth Amendments via 42 U.S.C.

§ 1983.

224.      As a direct and proximate result of the City's unlawful activity, Plaintiff has suffered

and continues to suffer damages for which the City is liable.

**Claim 16**
**MUNICIPAL *MONELL* LIABILITY 42 U.S.C. § 1983—FAILURE TO TRAIN**
**(BY PLAINTIFF MICHAEL LINSCOTT-HILL AGAINST THE CITY OF COLUMBUS)**

225.      Plaintiff Michael Linscott-Hill incorporates all previous allegations.

226.      "[A] city can be liable under § 1983 for inadequate training of its employees." *City of*

*Canton*, *Ohio v. Harris*, 489 U.S. 378, 388 (1969).

227.      The City failed to provide adequate training to its officers on clearly established First

Amendment rights, including basic distinctions between protected and unprotected speech.

228.      Given clearly established law requiring police officers to tolerate criticism, as well as

the City's direct experience, the City's failure to train its officers displays deliberate

indifference to the rights of persons they may encounter.

229.      Chief Woods has been amply exposed to controlling law regarding First Amendment

rights and is aware that issuing charges against citizens in retaliation for their free speech is

an unconstitutional and vindictive use of police power.

230.      The City is liable under the First, Fourth, and Fourteenth Amendments via 42 U.S.C.

§ 1983.

231.      As a direct and proximate result of the City's unlawful activity, Plaintiff has suffered

and continues to suffer non-economic damages for which the City is liable.

## PRAYER FOR RELIEF

For the reasons stated, Mr. Linscott-Hill states that total damages exceed $25,000, and respectfully requests the following relief from the Court:

1. Declare that Defendants' acts and conduct constitute violations of federal and state law;

2. Enter judgment in Mr. Linscott-Hill's favor on all claims of relief;

3. Award Mr. Linscott-Hill full compensatory damages, economic and non-economic, including, but not limited to, damages for pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience that Mr. Linscott-Hill has suffered and is reasonably certain to suffer in the future;

4. Award Mr. Linscott-Hill punitive damages for Defendants' egregious, willful, and malicious conduct;

5. Award pre- and post-judgment interest at the highest lawful rate;

6. Award Mr. Linscott-Hill his reasonable attorneys' fees and all other costs of this suit; and

7. Award all other relief in law or equity, including injunctive relief, to which Mr. Linscott-Hill is entitled and that the Court deems equitable, just, or proper.

### JURY DEMAND

Mr. Linscott-Hill respectfully demands a trial by jury on all issues within this complaint.

Date: August 31, 2022                    Respectfully submitted,

                                            THE CHANDRA LAW FIRM LLC

                                            */s/ Subodh Chandra (Trial Attorney)*
                                            Subodh Chandra (0069233)
                                            Donald P. Screen (0044070)
                                            The Chandra Law Building
                                            1265 W. 6th Street, Suite 400
                                            Cleveland, Ohio 44113.1326
                                            216.578.1700 Phone
                                            216.578.1800 Fax
                                            Subodh.Chandra@ChandraLaw.com
                                            Don.Screen@ChandraLaw.com

                                            *Attorneys for Plaintiff Michael Linscott-Hill*